# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 326 | **DATE** | 1/3/2002 |
| **CASE TITLE** | USA vs. RICHARD S. CONNORS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The defendant's motion to dismiss Counts Two and Three of the indictment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 09 2002 | |
| | Notified counsel by telephone. | | date docketed | 51 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States Of America | ) |
| | ) No. 01 cr 326 |
| v. | ) Judge Ronald A. Guzmán |
| Richard S. Connors, | ) |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Defendant, Richard Connors, is charged in an 8 count indictment in this case. Count Two charges that on or about April 7, 1996 Connors willfully and knowingly attempted to smuggle and clandestinely introduce into the United States "merchandise" which he should have endorsed; specifically 1150 Cuban cigars purchased in and transported from Cuba in violation of 18 U.S.C. section 545 & 2. Count Three charges that on or about April 7, 1996 Connors purchased and transported Cuban cigars in violation of the Trading with the Enemy Act, 50 U.S.C. sections 5(b) to(1) & 16 and related regulations. Both of these counts stem from the defendant's entry into the United States at the United States customs border checkpoint at the U. S. Ambassador bridge at Detroit, Michigan. At that entry defendant told customs inspectors he was not bringing into the

states any merchandise acquired outside the United States. He informed customs agents that he had been in Toronto attending an American Bar Association convention. However, a check of the luggage revealed among other things four suitcases containing a combined total of 1150 Cuban cigars, four bottles of Cuban Rum, and two T-shirts believed to have been purchased in Cuba. Subsequently the defendant agreed to pay a penalty of $1000 for not declaring the cigars.

Also found in the defendant's possession at the time of the border crossing were: (1) defendant's United States passport with six Cuban entry stamps; (2) airline ticket receipts for travel on Cuban airlines from Toronto, Canada to Havana, Cuba, on March 31, 1996 and returning to Toronto from Havana on April 7, 1996; (3) a Canadian Customs receipts showing that Connors paid duty on 13.15 kilograms of cigars; (4) a receipt from a Cuban cigar store in Havana, Cuba dated April 2, 1996 in the amount of $231; (5) a receipts from the Radisson Hotel in Toronto for the night of March 30, 1996.

Three days after the seizure Customs mailed a letter to Connors notifying him of its intent to forfeit the Cuban cigars, Rum and T-shirts and advising him of his right to challenge the forfeiture. No claim or challenge to the forfeiture was ever filed. Subsequently, on June 6, 1996, the forfeited contraband, including the cigars, was destroyed. The destroyed cigars are now the basis for Counts Two & Three of the indictment against the defendant. Defendant moves to dismiss

these counts because the government's destruction of the cigars makes it impossible for him to present the best evidence available that the cigars were not of Cuban origin, to wit, expert testimony based upon testing an examination of the cigars themselves.

The government responds initially by pointing out the motion to dismiss is improper under these circumstances. Such a motion, based upon an attack on the sufficiency of the government's evidence is tantamount to a motion for summary judgment. But, as the government correctly points out, there is no summary judgment procedure in criminal cases. While this is true, it does not end our inquiry. The fact that a motion may be improperly titled a motion to dismiss rather than a motion to bar evidence does not require us to deny the motion without considering the merits.

## DISCUSSION

In *Henry vs. Page*, 223 F.3d 477 (7th Cir. 2000), a *habeas corpus* case, the petitioner filed a *Motion in Limine* to bar testimony regarding the test results of alleged controlled substances because the substance itself had been destroyed by the state prior to affording petitioner an opportunity to conduct his own tests. The motion was denied by the trial court. The Seventh Circuit found no constitutional violation and dismissed the habeas petition. In rejecting the defendant's due process argument the court stated:

In cases very similar to this one, the Supreme Court has twice considered whether the destruction of evidence violates the Due Process Clause. In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), defendants who had been arrested for driving under the influence of alcohol claimed that their rights to analyze physical evidence were violated when the state destroyed samples of their breath taken at the time of their arrests. The Court rejected the notion that destruction of the breath samples violated due process. *Id.* at 488-89, 104 S.Ct. 2528. In doing so, the Court pointed out that the officers who destroyed the evidence "were acting 'in good faith and in accord with their normal practice.' " *Id.* at 488, 104 S.Ct. 2528 (quoting *Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). The Court emphasized that "the record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528. Aside from the absence of bad faith, the Court also found that the nature of the evidence did not require preservation of the breath samples. Specifically, the Court said: " [w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." ... In light of the principles announced in *Trombetta* and *Youngblood*, it is readily apparent that the Illinois courts did not violate Henry's due process rights by admitting evidence of the state's test results which showed that the substances seized from Henry's car were cannabis and cocaine. First and foremost, Henry fails to demonstrate any bad faith by the police. Rather, Henry agrees that the evidence custodian mistakenly destroyed the drugs after receiving the civil forfeiture order and incorrectly believing that his criminal case had been completed and the evidence no longer needed. Since he has demonstrated no bad faith by the government, there is no constitutional violation. See

-4-

> *Youngblood*, 488 U.S. at 57-58, 109 S.Ct. 333;
> *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528; *see also*
> *Jones v. McCaughtry*, 965 F.2d 473, 477-78 (7th
> Cir.1992); *Balfour v. Haws*, 892 F.2d 556, 565 (7th
> Cir.1989). In addition to not showing bad faith, Henry
> has also failed to demonstrate that the substances seized
> from his car were material to his defense. There is
> nothing in the record to suggest that the substances
> possessed an exculpatory value that was apparent before
> they were destroyed. In fact, the only evidence in the
> record illustrates that the substances were cannabis and
> cocaine. Because there was no showing of bad faith, and
> nothing to suggest that the destroyed evidence was not
> cannabis and cocaine, the Illinois courts' decisions to
> admit the evidence was not contrary to or an unreasonable
> application of clearly established federal law as announced
> by the Supreme Court in *Trombetta* and *Youngblood*.
> Accordingly, the district court properly denied Henry's
> argument on this issue.

This language is also applicable to the case before us. There is no showing of bad faith or malicious intent by the prosecution or law enforcement authorities. On the contrary, the cigars were destroyed in the course of procedure ordinarily followed in such Custom's forfeiture cases. The defendant was given an opportunity to object to the destruction of the cigars, an opportunity one would expect he would have availed himself of if, indeed, tests or inspection could show that the cigars were not of Cuban origin. However, the defendant not only failed to object but acquiesced in that he agreed to pay a fine of $1000 for failing to declare the cigars. In addition, there was no basis at the time the cigars were destroyed for believing that they constituted exculpatory evidence of any kind. Furthermore, the Customs agents could not have known that the defendant would be charged years later with a criminal conspiracy involving the smuggling

of Cuban cigars. Nor does the defendant proffer any evidence to suggest the likelihood of a different source of origin for these cigars even now. As in *Page*, the only evidence in the record tends to illustrate that the cigars were of Cuban origin. Of course, the defendant can not be expected to proffer conclusive evidence at this stage to the contrary, but he can be expected to present some reasonable theory buttressed to some extent by some other consistent circumstances pointing to some likelihood that the presence of the destroyed evidence is reasonably likely to have been of some exculpatory value.

In order to establish a due process violation in the destruction of the cigars on which defendant's prosecution is based, defendant would have to show that the cigars had exculpatory significance that would have been apparent before their destruction, and that the evidence the defendant was thereby deprived of was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means, or, alternatively, that the evidence was potentially useful to defendant and that the government acted in bad faith. *U.S. vs. Gomez*, 191 F.3d 1214 (10th Cir. 1999). None of these requirements are met in the case at bar. Further, in the case before us, unlike the cases above cited, there was no testing done by the government and, therefore, no unfair advantage with respect to the type of evidence which will be presented. Both sides will have to rely upon observations and circumstantial evidence to prove the origin of the cigars. The Seventh Circuit Court Of Appeals has previously determined that narcotics violations need not be proved by direct

evidence and thus it is not necessary to produce the actual controlled substance before the jury or trier of fact. *United States v. Folami*, 236 F.3d 860(7th Cir.2001.);*United States Vs. Kelly*, 14 F.3d 1169 (7th Cir.1994); *United States v. Lawson,* 507 F.2d 433, 438 (7th Cir.1974). Similarly, we find that there is no requirement that the government prove by direct evidence the violations charged in Counts Two and Three of this indictment. It is sufficient that circumstantial evidence strong enough to convince the trier of fact beyond a reasonable doubt be presented. It follows, then, that there is no necessity for the government to present the actual cigars to the trier of fact. In this case the government will no doubt present the testimony of eyewitnesses and the circumstantial evidence of the purchase of cigars in Cuba which was discovered at the time of the forfeiture by the Customs agents. In this respect the case is no different than if the cigars had never been recovered. Furthermore, the circumstantial evidence upon which the prosecution will rely is equally available to the defense. This is not a case, as the cases cited above, where the government can be said to gain advantage by being able to produce its expert testimony regarding the results of its scientific tests on the subject matter at issue while at the same time, by virtue of its destruction, denying the defendant the opportunity to do the same. The defendant's Motion to Dismiss Counts Two and Three of the Indictment is therefore denied.

Having come to this conclusion, it is nevertheless necessary to once again

express a warning to the government. In *Kelly* and *Folami*, *supra*, and other cases as well, the courts have made it clear that it is much preferable from the point of view of all concerned and, not least, from the point of view of maintaining the integrity of the criminal justice system, that evidence which forms the corpus of the crime alleged not be destroyed prior to trial by those alleging the commission of the crime. It smacks of unfairness for the government to prosecute a citizen on the basis of the physical characteristics of objects of alleged contraband which the government itself has destroyed thereby seemingly denying the accused the opportunity to refute the accusation at its core. The best and most convincing manner of establishing the existence or non-existence of contraband is to produce the objects of alleged contraband in court. That option no longer exists in this case. Nor does it suffice completely to dispel this impression of unfairness for the government to say that it provided the defendant with an opportunity to challenge the forfeiture and destruction of the cigars five years ago. At that time the defendant was no more capable of anticipating that the cigars would become the subject matter of an indictment five years later than was the Customs agent who destroyed the evidence. In fact, if anyone was in a position to understand the future importance of the cigars -- and we are not convinced that anyone was in such a position -- it would have been those law enforcement officers who were investigating the defendant all along. Those officers could easily have halted the destruction of the evidence. The cigars pose no danger to the public, such as explosives might. They require no extravagant or unusual storage facilities. Even retaining small samples of the cigars in

question would have sufficed for evidentiary purposes. Thus, the burden on the government in this case would have been slight. The more often such premature destruction of evidence occurs the more closely we will, of necessity, be forced to scrutinize any possibility of resulting unfairness to the accused. We therefore strongly urge the government to do whatever is necessary to avoid such predicaments in the future. Having reviewed the appropriate factors in this case, however, we are convinced there is no evidence of unfairness. There is no indication from any source that anyone could have suspected at that time that the cigars were in any way exculpatory evidence. There is no indication of bad faith on the part of the government.

For the reasons stated above the defendant's motion to dismiss Counts Two and Three of the indictment is denied.

SO ORDERED                                    ENTERED: January 3, 2002

                                              HON. RONALD A. GUZMAN
                                              United States Judge