# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 326 | **DATE** | 6/19/2002 |
| **CASE TITLE** | United States of America vs. Richard S. Connors | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) * ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motions to dismiss, for default and return of property and bond, for discovery and inspection, for a bill of particulars, to quash warrant and suppress evidence and the supplemental motion to quash warrant and suppress evidence are denied. Motion for discovery of Use of Mail Cover is granted. Motion for disclosure and production of electronic surveillance is denied as moot. The motion to suppress evidence is denied, except as to the second entry seizure by Skokie Police on 3/15/97. (43-1,2;34-1,2;32-1;28-1,2;26-1;25-1) *Enter memorandum opinion and order.*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✗ | Notices mailed by judge's staff. | | JUN 20 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 61 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 6-19-02 | | |
| | | | date mailed notice | | |
| TP | courtroom deputy's initials | | TP | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America )
)
      v.    **DOCKETED** )
)
Richard S. Connors   JUN 2 0 2002 )

No. 01 CR 326
Judge Guzman

## MEMORANDUM OPINION AND ORDER

The Defendant, Richard S. Connors, is charged with various offenses in connection with a conspiracy to smuggle Cuban cigars into the United States. There are nine pretrial motions before this Court: (1) Defendant's Motion to Dismiss for Improper Venue, Double Jeopardy and Failure to State a Claim, (2) Defendant's Motion for Default and Return of Property and Bond, (3) Defendant's Motion for Discovery of Use of Mail Cover, (4) Defendant's Motion for Discovery and Inspection, (5) Defendant's Motion for a Bill of Particulars, (6) Defendant's Motion for Disclosure and Production of Electronic Surveillance or Unlawfully Overheard Conversations, (7) Defendant's Motion to Suppress Evidence, (8) Defendant's Motion to Quash Warrant and Suppress Evidence (9) Defendant's Supplemental Motion to Quash Warrant and Suppress Evidence.

For the reasons that follow, (1) the Motion to Dismiss is denied, (2) the Motion for Default and Return of Property and Bond is denied, (3) the Motion for Discovery of Use of Mail Cover is granted, (4) the Motion for Discovery and Inspection is denied, (5) the Motion for a Bill of Particulars is denied, (6) the Motion for Disclosure and Production of Electronic Surveillance is denied as moot, (7) the Motion to Suppress Evidence is denied, except as to the second entry

1

*6 1*

seizure by Skokie Police on March 15, 1997. As to that seizure an evidentiary hearing will be necessary to resolve the issue of consent. (8) the Motion to Quash Warrant and Suppress Evidence is denied, and (9) the Supplemental Motion to Quash Warrant and Suppress Evidence is denied.

## I.    Background

The Defendant, Richard S. Connors, is charged in an eight-count indictment with violations of the Trading With the Enemy Act and related regulations, attempted smuggling, and making false statements on a passport application, all in connection with a conspiracy to smuggle Cuban cigars into the United States. The defense pretrial motions before the Court focus on three events. First, on April 7, 1996 the Defendant and his son were detained at the U.S./Canadian border. Upon inspection of their luggage, Customs agents seized 1150 Cuban cigars and other items. The Defendant was fined $1,000 and his passport was seized/retained. Second, on March 15, 1997 the Skokie police seized seventy-four boxes of Cuban cigars from the Defendant's home. Third, on October 27, 1999 U.S. Customs executed a search warrant at the Defendant's home. They recovered Cuban cigars and other evidence. The details of the case are discussed as needed below.

## II.    The Motion to Dismiss

### A.    Improper Venue

The Defendant moves to dismiss counts one, two, three, five, six, seven and eight for

improper venue. For the reasons stated below, the motion is denied. The Defendant contends that the conspiracy alleged in count one of the indictment was committed outside of the jurisdiction of the United States and that venue is therefore determined by 18 U.S.C. § 3238. Under Section 3238, the Defendant argues, venue is proper in the Eastern District of Michigan, where he claims he was first arrested in connection with the offense. This Court disagrees.

Generally, a defendant must be tried in the district where the offense is committed. Fed. R. Crim. P. 18. Of course, not all offenses are committed within a single district. An offense committed in more than one district may be tried in any district where the offense "was begun, continued, or completed." 18 U.S.C. § 3237 (2001). An offense involving the use of the mails or the importation of an object into the United States is a "continuing offense" and may be tried "in any district from, through, or into which" that mail or imported object moves. *Id.*

In this case, parts of the alleged conspiracy took place outside the jurisdiction of the United States. But count one also alleges that acts in furtherance of the conspiracy were committed in more than one district, including the Northern District of Illinois. For example, while in the Northern District of Illinois, the Defendant allegedly rented a car and made false statements on a passport application in furtherance of the conspiracy. The indictment also charges a continuing offense involving the use of the mails and importation. For example, the Defendant allegedly mailed his passport from Mexico to the Northern District of Illinois and imported Cuban cigars into the Northern District of Illinois in furtherance of the conspiracy. The Northern District of Illinois is therefore a district into which such commerce, mail matter, or imported object or person moves. Venue of count one is therefore proper in the Northern District

of Illinois under 18 U.S.C. § 3237.

In contrast, the offenses alleged in counts two, three, five, six, seven and eight of the indictment were committed outside the jurisdiction of any particular State or district. Venue is therefore proper "in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders . . . ." 18 U.S.C. § 3238 (2001). The term "first brought" applies only "where the offender is returned to the United States already in custody." *United States v. Liang*, 224 F.3d 1057, 1060 (9th Cir. 2000). In this case, the Defendant was clearly not "first brought" to any district. Therefore, venue is proper in the district where the offender or joint offenders are arrested, or if there has been no arrest, in the district of the last known residence of the offender or any one of the joint offenders.

The Defendant contends he was arrested for the offenses charged in counts two and three—attempted smuggling and trading in Cuban cigars—by U.S. Customs at a border checkpoint in the Eastern District of Michigan on April 7, 1996. Under Section 3238, he argues, venue is proper only in the district of his arrest, not the Northern District of Illinois.[1] In response, the Government argues that the Defendant was merely detained in connection with a failure to declare the 1150 Cuban cigars and other merchandise in his luggage. Because the Defendant was

---

[1] The Defendant makes the same argument regarding counts five, six, seven and eight. But those counts allege offenses committed between May 3, 1996 and July 24, 1998; the supposed arrest took place on April 7, 1996. The Defendant could not have been arrested for an offense before it was committed.

never arrested for the offenses charged, the Government maintains, venue is proper in the district of his last known residence, the Northern District of Illinois.

The Defendant relies on two facts to show that his detention, which lasted more than five hours, constituted an arrested for the offenses charged. First, while he was detained, customs agents considered prosecuting him criminally. He cites the official report of the incident, which notes that "prosecution was declined by [Special Agent] Kelly at this time." Second, he refused to answer the agents' questions, citing his Fifth Amendment right against self-incrimination.

Assuming that the agents considered prosecuting the Defendant for the same crimes charged in counts two and three, there is no reason why declining to prosecute an offense necessarily implies an arrest for that offense. Similarly, there is no reason why the Defendant's refusal to answer questions would transform a routine detention for failure to declare merchandise into an arrest for attempted smuggling or trading in Cuban cigars. Notwithstanding, it is axiomatic that a person is arrested for an offense when there can be no other reason for holding him. For example, in *United States v. Provoo*, 215 F.2d 531, 538 (2nd Cir. 1954), the Army held a soldier in Maryland on sodomy charges, which were dropped pursuant to an agreement with the Justice Department. Nevertheless, the Army continued to hold the defendant for months and later brought him to New York where they turned him over to the civil authorities to be tried for treason. *Id.* The court held that the defendant was arrested for treason in Maryland because the Army had no other reason to hold him once the sodomy charges were dropped. *Id.* In this case, however, Customs had another reason to detain the Defendant: they were conducting a border search. Unlike the defendant in *Provoo*, Connors was not held in the Eastern District of Michigan for the sole purpose of transporting him to the Northern District

of Illinois to be charged with attempted smuggling and trading in Cuban cigars. Rather, he was subject to a routine border search stemming from his own failure to declare merchandise. He was never arrested for the offenses charged in counts two and three of the indictment. Therefore, under 18 U.S.C. § 3238, venue is proper in the district of the Defendant's last known residence, the Northern District of Illinois.

The Defendant next argues that venue of count six is improper in this district under 18 U.S.C. § 3238 because a "joint offender" was arrested in the Eastern District of Michigan. Count six alleges that on or about July 28, 1996, the Defendant, "along with Co-conspirator B and Co-conspirator C," purchased and transported Cuban cigars outside the United States. In 1998, co-conspirator B, David Kircos, was charged in the Eastern District of Michigan with purchasing and transporting Cuban cigars while outside the United States on May 16, 1997. Even if Kircos is a joint offender, he was not arrested for the offense charged in count six. He was merely arrested for a violation of the same statute. Count six alleges that the Defendant, along with Kircos, committed an offense on July 28, 1996. Coincidentally, Kircos was arrested for a similar offense committed on May 16, 1997. In other words, Kircos may be a joint offender, and he was arrested, but he was not arrested as a joint offender.[2]

In conclusion, under 18 U.S.C. § 3237, the Northern District of Illinois is the proper venue for count one: it alleges offenses committed in more than one district, including the Northern District of Illinois, and it alleges continuing offenses involving the use of the mails and the importation of objects into the Northern District of Illinois. Furthermore, under 18 U.S.C. §

---

[2] Nor does Kircos's arrest determine the venue of count one. Although his attempt to smuggle cigars on May 16, 1997 is listed in count one as an overt act in furtherance of the conspiracy, the arrest of a joint offender is not a consideration in determining venue under 18 U.S.C. § 3237.

3238, the Northern District of Illinois is the proper venue for counts two, three, five, six, seven and eight: no offender or joint offender has been arrested for the charged offenses and the Defendant's last known place of residence is in the Northern District of Illinois.

## B.    Double Jeopardy

The Defendant argues that he was assessed a $1,000 penalty as a criminal punishment for offense charged in count two and that the charge is therefore barred by double jeopardy. Count two of the indictment charges the Defendant with attempting to smuggle 1150 Cuban cigars into the United States on April 7, 1996. On that day, the Defendant paid a $1,000 mitigated penalty imposed by U.S. Customs for his failure to declare the cigars and other merchandise at the U.S./Canadian border. *See* 19 U.S.C. § 1497; 19 C.F.R 148.18. For the reasons that follow, the Defendant's motion is denied.

Double jeopardy "protects only against the imposition of multiple criminal punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 493 (1997).[3] The determination of whether a penalty is civil or criminal is twofold: first, a court must look at the statute on its face and ask whether the legislature intended to establish a civil or a criminal penalty; second, even if the legislature intended a civil penalty, a court must ask "whether the

---

[3] In *Hudson*, the Court disavowed the method of analysis employed in *United States v. Halper*, 490 U.S. 435, 448, 109 S. Ct. 1892, 1901-1902 (1989). Under *Halper*, "punishment" of any kind was subject to double jeopardy constraints; a civil sanction could constitute punishment if it served the traditional goals of "retribution and deterrence." *Id.* at 448, 109 S. Ct. at 1902. Even under the more generous *Halper* standard, the Defendant's argument would most likely fail. *See United States v. McClinton*, 98 F.3d 1199, 1201 (9th Cir. 1996) (holding that a $1,000 penalty for failure to declare 9.6 grams of marijuana did not reach the level of punishment under a *Halper* analysis).

statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (internal quotation marks and citations omitted).

In answering the second question, there are seven factors to be considered: (1) whether the penalty involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it requires scienter; (4) whether it aims at the traditionally criminal goals of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether it has an alternative purpose other than punishment-retribution and deterrence; and (7) whether it is excessive in relation to the alternative purpose. *Hudson*, 522 U.S. at 493, 118 S. Ct. at 99-100. Only "the clearest proof" will suffice to override the legislative intent to create a civil remedy. *Hudson*, 522 U.S. at 493, 118 S. Ct. at 100.

The Supreme Court has already analyzed the legislative history of 19 U.S.C. § 1497 and concluded that the forfeiture provision is "a civil sanction." *One Lot Emerald Stones v. United States*, 409 U.S. 232, 236, 93 S. Ct. 489, 492-93 (1972). The Defendant has not argued that the legislative intent is otherwise.

Turning to the second part of the inquiry, the statute is not so punitive in its purpose or effect that it overrides the legislative intent to create a civil penalty. First, the penalty does not involve an affirmative disability or restraint, such as imprisonment. *See Hudson*, 522 U.S. at 104, 118 S. Ct. at 496. Second, historically, money penalties have not been viewed as punishment. *Id.* at 104, 118 S. Ct. at 496. Third, Section 1497 does not require scienter. Fourth,

8

the penalty imposed on the Defendant may have a deterrent effect, but that effect alone does not render the penalty criminal because "deterrence may serve civil as well as criminal goals." *Id.* at 105, 118 S. Ct. at 496 (internal quotation marks omitted). Fifth, the fact that the Defendant was assessed a penalty for conduct that might also be criminal does not necessarily make the penalty a criminal punishment. *Id.* (holding that this is particularly true in the double jeopardy context because the "same-conduct" test was rejected in *U.S. v. Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 2860 (1993)). Sixth, Section 1497 has an alternative purpose: it "provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigation and enforcement expenses." *One Lot Emerald Cut Stones*, 409 U.S. at 237, 93 S. Ct. at 493. Finally, the measure of recovery is not "so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty." *Id.*; *See also United States v. McClinton*, 98 F.3d 1199, 1201 (9th Cir. 1996) (holding that a $1,000 penalty for failure to declare 9.6 grams of marijuana did not reach the level of punishment).

The Defendant paid a civil penalty for violating U.S. Customs regulations when he failed to declare Cuban cigars and other merchandise. That penalty does not bar a criminal prosecution for attempting to smuggle the cigars into the United States under 18 U.S.C. § 545. The motion to dismiss count two on double jeopardy grounds is therefore denied.

## C.    Failure to State a Claim

The Defendant also moves to dismiss count four of the indictment for failure to state a

claim. Count four alleges that the Defendant made three false statements on a passport application in violation of 18 U.S.C. § 1542: (1) that his passport was lost or missing when in fact it had been retained by U.S. Customs, (2) that his passport had been "missing since 4-7-96 while I was visiting friends in Canada and returning to the United States," and (3) that he did not have "time to recover the passport because I am leaving for England on Friday." For the following reasons, the Defendant's motion is denied.

An indictment must state all of the elements of the crime charged; it must inform the defendant of the nature of the charge so that he can prepare a defense; and it must enable the defendant to plead the judgment as a bar to future prosecutions for the same offense. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000); Fed. R. Crim. P. 7(c)(1). In addition, an indictment must allege facts that, if proven, constitute the crime charged. *United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir. 1987).

The relevant portion of 18 U.S.C. § 1542 seeks to punish the following people:

> Whosoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws.

In this case, the indictment clearly states all the elements of the crime charged: it alleges that the Defendant "willfully and knowingly [made] materially false statements on his application with the intent to induce and secure the issuance of a passport [contrary to law]." In

addition, the three statements are specific enough to enable the Defendant to prepare his defense and to plead a judgment as a bar to future prosecutions for the same offense. Finally, if proven to be true, the charge constitutes a violation of Section 1542. The indictment is therefore sufficient to charge the offense.

Defendant first argues that the statement he is alleged to have made, to wit, that his previous passport was "missing/lost" cannot be the basis for the offense of making a false statement because the word "lost", as defined in Black's Law Dictionary, Sixth Edition is:

> An article is "lost" when the owner has lost the possession or custody of it, involuntarily and by any means....

Defendant further argues that since the government admits "in the indictment" that his passport was not in his possession on the date of the application because it was involuntarily taken from him by a government agency, the passport was, in fact, lost and the statement he is alleged to have made was not false. Unfortunately the defendant, no doubt unintentionally, has omitted a rather large part of the definition from *Black's Law Dictionary* upon which he relies. The full definition is as follows:

> An article is lost when the owner has lost the possession or custody of it, involuntarily and by any means, but more particularly by accident or his own negligence or forgetfulness, and when he is ignorant of its whereabouts or cannot recover it by an ordinarily diligent search.

Under this definition, even if we accept the defendant's representation as to what is admitted in the indictment, the defendant has made a false statement in stating that his passport was lost because he was not ignorant of its whereabouts nor was it lost by accident or his own negligence

11

or forgetfulness. He knew precisely what had happened to his passport. It was not lost. At any rate, whether or not the defendant made a false statement is for the jury to decide. The indictment alleges that he did and does so in a manner sufficient to state an offense.

The Defendant further argues that count four should be dismissed because it does not allege any false *material* statements. The indictment, however, alleges precisely that even though materiality is not expressly required by Section 1542; the word "material" is not even mentioned. Further, although there appears to be no Seventh Circuit decision directly on point, in *Liss vs. United States of America*, 915 F.2d 287, 293 (7th Cir. 1990) the Seventh Circuit analyzed the intent requirement of 18 U.S.C. section 1542:

> For a violation of § 1542 to occur, an individual must have specific intent to misstate information on a passport application: "The crime is complete when one makes a statement one knows is untrue to procure a passport." *United States v. O'Bryant,* 775 F.2d 1528, 1535 (11th Cir.1985); ("Good or bad motives are irrelevant."); *O'Bryant* at 1535 (citing *Browder v. United States,* 312 U.S. 335, 337-38, 61 S.Ct. 599, 601-02, 85 L.Ed. 862 (1941)).

There is no mention of materiality in this holding. In *United States vs. Ramos*, 725 F.2d 1322, 1323-1324 (11th Cir. 1984) the Eleventh Circuit expressly distinguished 18 U.S.C. 1542 from 18 U.S.C. 1001 which does require a false statement of a material fact.

> Properly applied section 1001 requires proof that the false statement be of a material fact, see *United States vs. Baker,* 626 F.2d 512, 514 (5th Cir. 1980), an element not needed for section 1542 where "any false statement" is sufficient. On the other hand, section 1542 requires that the false statement be made "with the intent to induce or secure ... a passport."

In *United States v. Wells*, 519 U.S. 482, 117 S. Ct. 921 (1997) the Court interpreted 18 U.S.C. § 1014, which applies to "[w]hoever knowingly makes any false statement or report, or

12

willfully overvalues any land, property or security, for the purpose of influencing in any way the action of [certain lending institutions]." The Court refused to infer a materiality element because the settled common-law meaning of the statutory language did not imply such a requirement. *Wells*, 519 U.S. at 491, 117 S. Ct. at 927 (holding that "the term 'false statement' carries no general suggestion of influential significance."); *cf. United States v. Nash*, 115 F.3d 1431, 1436 (9th Cir. 1997) (following *Wells*, but holding that the term "representations," as used in 18 U.S.C. § 1344, implies a materiality requirement in its common-law meaning). Similarly section 1542 refers to "any false statement," and, like the statute considered in *Wells*, it should not be interpreted as "any false material statement." Therefore, we would ordinarily conclude that materiality is not an element of the charge and the Government's supposed failure to allege materiality is of no consequence. However, both the indictment and the *Government's Consolidated Response to Defendant's Pretrial Motions* actually do state that materiality must be proven:

> What is significant, and what the government must prove a trial, is that defendant willfully and knowingly made *materially* false statements in an application for a passport, with the intent to induce the issuance of a passport. (Government's Brief at p. 12 Emphasis added. )

Count Four of the indictment alleges that:

> On or about April 8, 1996, in Chicago, in the northern district of Illinois, Eastern division, Richard S. Connors, defendant herein, did willfully and knowingly make *material* false statements in an application for a passport....(emphasis added)

In this context, "material" means "ha[ving] a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States. v. Wells*, 519 U.S. 482, 489, 117 S. Ct. 921, 926 (1997) (quoting *Kungys v. United States*, 485 U.S. 759, 770, 108 S. Ct. 1537, 1546 (1988)). This definition appears to overlap section 1542's

13

requirement that the false statement be made both knowingly and with intent to induce or secure the issuance of a passport under the authority of the United States. These statutory requirements insure that some trivial unintentional mistake not likely to have any effect is not being criminalized and would seem to render a requirement of materiality superfluous. Under either interpretation of the statute the language of the indictment, which contains the word "materially" is sufficient to charge an offense under 18 U.S.C. § 1542. Whether or not the defendant has a defense to the allegations remains to be seen.

Without a single citation defendant declares that materiality is a question of law for the court. Not so. While this was true at one time, see, e.g., *United States Vs. Lesperance*, 25 F.3d 553,557 (7th Cir. 1994), it ceased to be true when the Supreme Court decided that the Sixth Amendment guarantees a criminal defendant's right to have a jury decide each and every element of the offense with which he is charged, including the issue of materiality. *United States vs. Ross*, 77 F.3d 1525, 1539 (7th Cir. 1996), citing *United States vs. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). Whether or not the defendant's alleged statements would have a natural tendency to influence the decision to issue him a passport at that time and place depends upon all of the circumstances surrounding the application including whether or not the fact that his passport had actually previously been confiscated, not lost, and was being retained by Customs would prevent him from obtaining a new passport. This, in turn, may depend upon the rules and regulations concerning the issuance of new or replacement passports and the revocation of passports and all of the facts and circumstances surrounding the event. This determination is for the jury to make. The motion to dismiss for failure to state a claim is therefore denied.

### III. Motion for Default and Return of Bond

The Defendant has filed a motion entitled *Defendant's Motion for Default and Return of Property and Bond.* The motion is somewhat confusing in that he requests that the motion be treated as a motion to suppress under Fed.R.Crim.P. 41(e). The defendant, however, already has filed several motions to suppress which appear to cover the same items of evidence he seeks to suppress under this motion. Furthermore, in case No. 00cv 6091 before this district court the defendant petitioned for precisely the same relief as he seeks in the present motion. On Nov. 14, 2000 the district court adjudicated that motion granting it in part and denying it in part and thereby terminating the case. A review of that judgment can only be had in the Seventh Circuit Court of Appeals. At any rate, ultimate right to ownership and possession of the property is not a determination the court is prepared to make at this time while the property constitutes evidence in the trial. Whether or not the property is ultimately subject to confiscation after it has outlived its usefulness as evidence can be determined after the trial of this criminal cause. In addition, the government represents that all the property with the exception of the 904 pieces of Cuban cigars has already been returned. This motion is therefore denied.

### IV. Motion for Discovery of Mail Cover

In its response to the motion, the Government agrees to provide the requested material. The motion is therefore denied as moot.

## V.    Motion for Discovery and Inspection

The Defendant has moved this court for an order directing the Government to produce everything it is required to produce under Rule 16 of the Federal Rules of Criminal Procedure and more. To the extent that the motion seeks an order reiterating the Government's obligations under Rule 16, the motion may be considered premature. To the extent that the motion seeks discovery beyond the requirements of Rule 16, the motion is denied because the Defendant has not made a showing that such discovery is necessary.

There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). But the Government is required to make certain disclosures under Rule 16 of the Federal Rules of Criminal Procedure. The language of Rule 16, as amended in 1975, has been recast from "the court may order" or "the court shall order" to "the government shall permit" in order to make it clear that discovery should be accomplished by the parties themselves. Therefore, "[t]here is no need for a formal motion and, unless a snag develops, no need for court intervention." *United States v. Mentz*, 840 F.2d 315, 328 (6th Cir. 1988).

The Defendant does not claim that the Government has denied any discovery requests or failed to meet its obligations under Rule 16. The government's response to the motion states that the defendant has been, or will be, provided everything to which he is entitled. An order requiring the Government to comply with Rule 16, when there is no evidence that it has failed to ado so, would be redundant and contrary to the intent of Congress and the Supreme Court in

promulgating and enacting the 1975 amendments.

Nevertheless, a district court is not constrained by Rule 16 and it may order discovery beyond the requirements of the rule in order to "assure the proper and orderly administration of criminal justice." *United States v. Jackson*, 508 F.2d 1001, 1006-7 (7th Cir. 1975) (holding that a district court can order the prosecution to disclose its witness list even though the defendant has no right to such disclosure under Rule 16). But a court should only exercise such discretion when "a defendant has specifically put forth some evidence which would necessitate this type of disclosure, or where such need is readily apparent to the Court." *United States v. Germinain*, 411 F. Supp. 719, 725 (S.D. Ohio 1975). In this case, the Defendant has not suggested any reason to go beyond the requirements of Rule 16 and this court sees no reason to do so.

The Defendant's motion is therefore denied without prejudice to his renewal of the same upon the failure of the Government to comply with the provisions of Rule 16 of the Federal Rules of Criminal Procedure. The government will be required to meet its disclosure obligations in this case no later than 30 days prior to trial. If there is a dispute as to whether something is discoverable under the rule, the issue should be raised specifically in a motion under Rule 16(d)(2). If the Defendant seeks discovery beyond the requirements of Rule 16, he must demonstrate that such discovery is necessary in this case for the proper and orderly administration of criminal justice.

## VI.  Motion for a Bill of Particulars

The Defendant moves for a bill of particulars pursuant to Rule 7(f) of the Federal Rules

of Criminal Procedure. The motion requests eight particulars: (1) the time and exact place of the alleged offenses, (2) the means by which the offenses were allegedly committed, (3) the name and address of every informer and person relied on for the information in the indictment, (4) the name and address of every person on the Government's witness list, (5) the criminal history of any potential witness, co-defendant or co-conspirator, (6) the names of unindicted co-conspirators, (7) when, where, and in what manner the Defendant became a member of the conspiracy, and (8) any overt acts in furtherance of the conspiracy not set forth in the indictment that the Government intends to prove at trial.

A bill of particulars is unnecessary if the indictment "sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981), *cert. denied*, 455 U.S. 1021 (1982). An indictment that sets forth the elements of each offense charged, the time and place of the defendant's conduct that violated that offense, and citation to the statute or statutes violated, satisfies this test. *Id.* In other words, a "defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Id.* at 135. The amount of discovery produced is also a consideration: a bill of particulars is unnecessary if the information required for a defense can be obtained through "some other satisfactory form." *United States v. Canino*, 949 F.2d 928,949 (7th Cir.1991), *cert. denied*, 503 U.S. 996 (1992) and 504 U.S. 910 (1992). The determination of whether a bill of particulars is necessary is within the sound discretion of the district court. *Id.*

The first two particulars requested by the Defendant—the exact time and place of the offenses and the method by which they were committed—are already sufficiently particularized in the

indictment. Each count charges an offense committed "on or about" a particular date and gives sufficient detail to determine the method of commission. For example, count one, sections 13(a), (b), and (c), alleges that on or about March 30, 1996 the Defendant "drove from Skokie, Illinois to Toronto, Canada, and after a one night stay in Toronto, flew to Cuba via a commercial airlines," where he and co-conspirator A purchased 1,150 Cuban cigars, which they then tried to smuggle into the United States on April 7. The extraterritorial offenses are alleged, generally, to have been committed "while outside the United States," but that is specific enough. The Government cannot be expected to state, for example, the exact places in Cuba where the Defendant bought cigars. The remaining requests can be sufficiently met through discovery under Rule 16. They are not necessary to remedy any insufficiency in the indictment.

In conclusion, the indictment is not too vague or indefinite to inform the defendant of the nature of the charges against him, to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, or to enable him to plead his acquittal or conviction in bar of another prosecution for the same offenses. In addition, the Defendant has been provided more than 5000 pages of discovery in this case (due to the amount of discovery, this Court has previously granted the Defendant an extension to file pretrial motions) including the affidavit of the investigating agent used to procure the search warrant which necessarily details much of the prosecution's case. Further, the government represents that it has already tendered statements of unindicted co-conspirators to the defendant and we therefore assume the identities of these unindicted co-conspirators are now known to the defendant. The government is ordered to disclose whether or not it is withholding the names of any informants which are material witnesses to the offenses alleged or to the acts in furtherance of the conspiracy which it intends

to prove. Except as above stated, the motion for a bill of particulars is denied.

**VII     Motion for Disclosure and Production of Electronic Surveillance or Unlawfully Overheard Conversations.**

In its response to the motion, the Government states that "[t]here has been no electronic surveillance, overheard conversations, or requests for such, in this investigation." The motion is therefore denied as moot.

**VIII.    Motion to Suppress Evidence**

Defendant has filed a motion to suppress evidence, to wit, ,Cubans cigars seized by the Skokie, Illinois police on March 15, 1997, evidence gathered on or about November 10, 1997 by opening a Federal Express envelope addressed to defendant's attorney, and computers, data, documents, and records seized during the execution of a search warrant on or about October 27, 1999 at 5443 Suffield Terrace, Skokie, Illinois.

**A.     March 15, 1997 Seizure by Skokie Police**

Defendant contends that on March 15, 1997 members of the Skokie police department made a warrantless entry into the defendant's home/office at 5443 Suffield Terrace, Skokie, Illinois. He alleges that after being told to vacate the premises by him, the Skokie police took him into custody and transported him to the Skokie police station. In his memorandum and support of the motion he cites "exhibit 1" in support of this contention. He further alleges that

while at the police station he was falsely told that a records check revealed that he did not have a valid firearm owners identification card and was therefore subject to arrrest for illegal possession of firearms. He cites "exhibit 2" in support of this contention. He further alleges that thereafter a second warrantless entry was made of the premises at 5443 Suffield Terrace by the Skokie police without his consent during the late afternoon hours and/or early evening hours on March 15, 1997. During the second entry the Skokie police obtained information and removed purported Cubans cigars. Defendant again cites "exhibit 2" in support of this contention.

Attached to the motion are four documents stamped with numbers; to wit, documents 02236 (with a handwritten #1), 02257 (with a handwritten #2), 00054 (with a handwritten #3), and 00057 (with a handwritten #4). Attached to and referenced by the *Memorandum in Support of Defendant's Motion to Suppress Evidence* are five documents, to wit, a document stamped No. 02235 (with a handwritten #1), a document stamped 02236 (with a handwritten #2), a document stamped 02240 (with a handwritten #3), a document stamped 02257 (with a handwritten #4), and a document entitled Defendant's Affidavit (with a handwritten #5). Documents 1,2,3 and 4 appear to be portions of the Report of Skokie Police Officer C. Brezezicki. The entire report is appended as "Exhibit A" to the Government's Second Consolidated Response to Defendant's Pretrial Motions. A summary of the facts contained in the entire report follows.

Officer Brzezicki relates that at approximately 9:30 PM on Friday March 14, 1997 he, Detective Pechtor and Sgt. Fowler responded to a complaint of a home invasion at 5443 Suffield Terrace. At that location the victim, the defendant in this case, stated that two white male subjects who announced themselves as police officers conducting the execution of a search

21

warrant pushed open his door and held him face down on the floor with his hands restrained while they searched the premises. The defendant struggled with his assailants and at some point managed to barricade himself inside the bathroom after which the assailants left. He then gave chase in his automobile and obtained the license plate number of the getaway vehicle. The license plate number given by the defendant was registered to Miller Eureka Inc. at 4608 North Ozanam in Norridge, Illinois. The defendant provided descriptions of the two assailants to the officers. He told the officers that 50 boxes of Cubans cigars valued at approximately $25,000 along with four handguns were taken by the assailants. He also admitted driving to Canada were he purchased the cigars and transporting the Cubans cigars back into the United States. When informed that it was illegal to possess Cuban cigars and that a fine of up to $500 per cigar could be imposed the defendant informed the officers that he did not care.

Next day officer Brzezicki and detective Lopez went to the defendant's residence again. He invited them into his house and informed them that all of his property had been returned. He then directed the officers to his dining room and pointed to the dining room table which had four handguns upon it. He directed the officers of up to the second floor area of his house which contained approximately 50 boxes of Cubans cigars over the area at the top of the stairs and told the officers that the cigars were returned along with some coins and computer equipment that he didn't even realize had been taken. According to the defendant he first found all of this property on his garage floor after returning home from an absence of approximately three hours that afternoon. The officers became suspicious and questioned him further about some inconsistencies in his description of events. The defendant finally indicated that he would not answer any more questions citing attorney-client privilege. After a few more questions

defendant instructed the officers to leave his house. He agreed however to continue with the questioning as long as it was not at his home. The officers then transported him to the Skokie police department. At the Skokie police department the defendant continued to refuse to answer some questions citing attorney-client privilege.

In answer to the officers inquiry while at the Skokie Police Department the defendant indicated that he did possess a firearm owners identification card but that it was back at his house. The report indicates that the officers checked LEADS which indicated that there was no record of a firearm owners identification card issued in defendant's name. According to the report Officer Brzezicki then told the defendant that: "I wanted to accompany him back to his house and give him an opportunity to produce his FOI. I also added that if he did not have a card, I would have to take possession of the handguns pending compliance. I also informed the victim that I wanted an evidence technician to take a second look at his house to make certain that no evidence had been overlooked. Detective Lopez #292 and myself than transported victim back to his house." At his home the defendant produced an expired firearm owners identification card and the four handguns were collected by the officers. The officers also took possession of 74 boxes of Cubans cigars which were subsequently photographed and placed in recovered property.

On Sunday, March 16 1997, the report indicates that officer Brzezicki received information that Mr. Miller of Miller Eureka Inc. was at the Norridge Police Station reporting his vehicle stolen some time between 6 PM Friday March 14 and 7:30 PM Sunday March 16. Mr. Miller was subsequently placed in the lineup which the defendant viewed. He was not

identified. Later on Customs Agent John Sheridan informed officer Brzezicki that it was a violation of federal law to possess Cuban cigars and that he would refer the matter to the U.S. Attorneys office. Agent Sheridan agreed to take possession of the cigars.

On Tuesday, March 19, 1997 Officer Brzezicki received a phone call from defendant's lawyer, John Westley. Attorney Westley informed officer Brzezicki that he had instructed the defendant not have any further communication with the police and he did not want to police to question the defendant outside of his presence. The officer informed attorney Westley that the defendant was to be charged with unlawful possession of firearm and Mr. Westley agreed to surrender his client at the Skokie police department.

The defendant's first contention is that on March 15, 1997 members of the Skokie Police Department made two warrantless entries into his home. Although technically correct, this assertion is far from the whole truth. The police reports to which he himself cites, at pp. 2234 and 2235 (Government's Ex. A) clearly state that the first such entry occurred when the officers were invited into his home by him and directed to the dining room where the handguns were observed and then to the second floor area at the top of the stairs where the boxes of Cubans cigars were observed. The defendant does not explicitly contradict this description of the events and in fact, as pointed out above, references these reports in his motion and memorandum. We therefore accept these facts as true for purposes of the motion to suppress.

The plain view doctrine authorizes a warrantless seizure if three requirements are fulfilled: (1) the officer is lawfully in a position to see plainly the object seized, (2) the officer

has probable cause to believe the object is contraband or evidence of a crime, and (3) the officer has a lawful right of access to the object. *Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2307-08 (1990). The discovery of evidence need not be inadvertent. *Id.* at 129 (holding that "the fact that an officer is interested in an item and fully expects to find it should not invalidate its seizure if the search is confined in area and duration by a warrant's terms or by a valid exception to the warrant requirement."). Clearly, if the officers were invited into the home and the defendant voluntarily pointed out to them the existence of evidence and/or contraband, then under the plain view doctrine, there was no violation of the defendant's rights at that point and the officers had sufficient probable cause based upon what they observed and what the defendant had previously told them to conclude that the cigars and the guns were either contraband or evidence or both. The cigars and guns could have been seized at that time pursuant to the plain view exception without a warrant.

The defendant also alleges that after being told to vacate the premises by him, the Skokie police took him into custody and transported him to the Skokie police station. But this also is flatly contradicted by the very document he cites in support thereof. Document number 02235, (Exhibit 1, *Memorandum in Support of Defendant's Motion to Suppress Evidence*) clearly states that after being informed that in order for the investigation of the alleged invasion of his home to continue he needed to cooperate and answer additional questions: "Victim agreed to continue with the interview as long as it was not at his house. Myself and detective Lopez #292 then transported victim back to Skokie P.D." According to this document which the defendant cites in support of his motion he volunteered to cooperate and answer additional questions at the Skokie Police Department. Thus, any information gained as a result of his continued questioning at the

25

Skokie Police Department was also obtained without violation of his rights.

The defendant next contends that a second warrantless entry without his consent was made "during the late afternoon hours and/or early evening hours on March 15, 1997." It was during this second entry that the police obtained information and removed the purported Cuban cigars without a warrant or the consent of the defendant. He cites to Exhibit 2 (document 02236) of the *Memorandum in Support of Defendant's Motion to Suppress Evidence* in support of this statement. But exhibit 2 does not entirely support this contention either. It states that the defendant was given an opportunity by the officers to return to his home and produce a firearm owners identification card and thereby avoid having the weapons confiscated. We find this portion of the report ambiguous. One could clearly assume from the fact that he accompanied the officers to the police station in the first place for the purpose of furthering the investigation of the armed robbery and invasion of his home that he had reported the previous evening, that the defendant voluntarily accompanied the officers back to his home and allowed them access to his home. The report, however, does not explicitly state this. Furthermore, the defendant states in his submissions that this entry and seizure were without his consent. Whether or not there was consent for this subsequent entry depends upon the details of what was done and said at the police station and upon return to the defendant's home. Clearly, from the description in the reports referenced by the defendant in his own motion and memorandum, the information regarding the existence of the guns and the cigars in plaintiff's home was freely and voluntarily given. Said information is more than sufficient to establish probable cause to believe that the cigars and firearms constituted either contraband or evidence of a crime or both. The collection of the information which formed the bases of the officers' belief that the cigars and weapons

were either contraband or evidence of a crime, therefore, violated no rights. The only uncertainty remaining is whether or not the return to the home from the police station and the actual seizure of the evidence was with consent or under some other exception to the warrant requirement . Because the defendant specifically denies consent and the reports to which he cites are ambiguous, an evidentiary hearing will be necessary to resolve this issue.

## B.     Contents of Federal Express Envelope

The Defendant moves to suppress evidence obtained by U.S. Customs agents on November 10, 1997 when they opened a letter-sized Federal Express envelope on route from Cancun, Mexico to Chicago, Illinois. The envelope was addressed from the Defendant, at his Skokie residence, to "John Walters, Attorney." On the shipping label, the contents were described as "documents." According to his report of the incident, the inspector found the envelope suspicious for three reasons: (1) although it was mailed from Mexico, it used an Illinois address for both sender and recipient, (2) its thickness suggested that it contained a passport, and (3) mailed passports are inherently suspicious because they might be "stolen, altered, fraudulent, etc." Upon examination, agents discovered the Defendant's passport concealed within an art pamphlet along with three white envelopes that contained various pictures of artwork, several business cards, a receipt, and a photocopied article. Apparently, there was no correspondence in the envelope.

Generally, "all mail arriving from outside the Customs territory of the United States . . . is subject to Customs examination." Such a search is the functional equivalent of an international border search and federal agents are not bound by Fourth Amendment standards when they

27

conduct such routine searches. *United States vs. Smith*, 29 F.3d 270 (7th Cir. 1994); *United States vs. Carter*, 592 F.2d 402, 404 (7th Cir.). Nevertheless, certain restrictions and safeguards apply to the examination of letter class mail. 19 U.S.C. § 482, authorizes certain federal agents, to "search any trunk or envelope, wherever found, in which [the agent] may have a *reasonable cause to suspect* there is merchandise which was imported contrary to law." (emphasis added). A variety of regulations implement, supplement, and explain section 482 and the "reasonable cause to suspect" standard. See, e.g. 19 C.F.R. §§ 145.2, 145.3, & 162.7. The "reasonable cause to suspect" standard "is ultimately a matter of judgment for each Customs official, based on all relevant facts and circumstances." 19 C.F.R. § 145 app. Letter class mail that appears to contain only correspondence may be examined only if Customs obtains a search warrant or the sender's written consent. 19 C.F.R. 145.3(b). Letter class mail that appears to contain material in addition to, or other than, correspondence may be examined if Customs has "reasonable cause to suspect the presence of merchandise or contraband." 19 C.F.R. § 145.3(a). The "reasonable cause" standard is less stringent than "probable cause." *United States v. Ramsey*, 431 U.S. 606, 612-13, 97 S. Ct. 1972, 1977 (1977). The most specific formulation of "reasonable cause" is that "an official must be aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the package contains illegal material." *United States v. Most*, 789 F.2d 1411, 1415 (9th Cir. 1986).

In this case, the thickness of the envelope and the sender's description of its contents as "documents" suggested to the Customs inspector that it contained a passport—i.e., something other than correspondence. Therefore, a warrant was not necessary. Rather, the inspector needed only a reasonable suspicion that the envelope contained illegal material. In the opinion of this

court, the unusual addresses, the thickness of the envelope, the designation of the contents as documents and the inherently suspicious nature of mailed passports, when taken together, provided the inspector with reasonable cause to examine the envelope. The Defendant's motion to suppress the evidence is therefore denied.

### C.    Privileged Information

The Defendant argues that the "computers, data, documents, and records" that were seized from his home, which is also his law office, contain information that is protected by the attorney-client privilege or the work-product doctrine. The motion does not specify any particular pieces of such evidence, nor does it even identify what types of evidence is being questioned. Is the defendant objecting to the seizure of lists, legal memoranda, letters or affidavits? Nor are the clients to whom the privilege belongs, or the transactions which resulted in the attorney - client privilege identified in any way. The motion lacks specificity. In its response, the Government states that it "has no intention of seeking the admission of any evidence that [is privileged]." The defendant also alleges generally a violation of the attorney work-product doctrine.  But again we are given no specifics and it does not appear that there could be any materials sought to be introduced in this criminal prosecution which were prepared in anticipation of trial.  Certainly, since no trial was contemplated at the time of the seizure, the materials could not have been prepared in anticipation of this trial. Apparently, the Defendant is asking this Court to suppress all of the evidence gathered at his home/law office because some of it might be privileged. There is no authority for such an order and the prosecution has declared  it will not seek introduction of any material subject to the attorney-client privilege. Defendant's

motion is denied.

## C.  Motion to Quash Warrant and Suppress Evidence

On October 27, 1999 U.S. Customs, accompanied by the Skokie Police, executed a search warrant at the Defendant's home. The Defendant requests a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), claiming that the warrant was obtained through the perjury of U.S. Customs Agent Sheridan.

In order to request a hearing, the Defendant must make a "substantial preliminary showing" of two factors: (1) that Agent Sheridan knowingly and intentionally, or with reckless disregard for the truth, made false statements in his warrant affidavit, and (2) that those false statements were necessary for the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2676 (1978). A hearing would give the Defendant an opportunity to prove these two factors by a preponderance, thus voiding the warrant and excluding the fruits of the seizure. *Id.*

The Defendant argues that Agent Sheridan's affidavit contains two false statements. First, it states that when the Defendant was detained at the U.S. border on April 7, 1996, the only enforcement action taken was "the seizure of all Cuban origin products as well as the passports belonging to him and his son."[4] That statement, the defendant maintains, is false because it fails

---

[4] The Defendant argues that the passports were "retained" not "seized." He has not explained why Agent Sheridan would lie about this difference or why it would make any difference in the magistrate's probable cause determination.

to disclose that he was also penalized $1,000 for failing to declare the merchandise. Nevertheless, the magistrate's false belief that the Defendant did not pay a $1,000 penalty could not have been necessary for his finding of probable cause unless a person who paid a $1,000 penalty is less likely to keep evidence of a continuing course of conduct involving cigar smuggling, etc., in his home than a person who did not pay such a penalty (a proposition for which there is no authority and which we find illogical). Possibly the defendant is arguing his double jeopardy theory again. That is, that the magistrate Judge was led, by this omission, to believe that the defendant was being investigated for the April 7, 1996 border incident when he had already been placed in jeopardy and penalized for that event. In addition to our rejection, above, of this theory, we also note that the agent's affidavit in support of the search warrant indicates that "since April 7 1996 and continuing through the date of this affidavit, (sometime in 1999) Richard S. Connors has traveled to Cuba and illegally smuggled Cuban cigars and other Cuban origin merchandise into the United States." The magistrate Judge was therefore making a determination as to the likelihood of finding evidence or contraband or both in Mr. Connors' home which would relate not only to the incident of April 7, 1996 but also to conduct which continued through the date of the affidavit. Therefore, even were we to conclude that the inclusion of the $1,000 penalty in the affidavit would have caused the magistrate Judge to disregard the likelihood of finding evidence of the April 7, 1996 incident because the defendant had already been placed in jeopardy for that incident, this would not lead us to conclude that the affidavit would then be lacking in probable cause to search the home for the many other incidents described in the affidavit.

Second, the Defendant complains that the warrant affidavit failed to mention that the

place to be searched was not only the Defendant's home, but his law office as well. If Agent Sheridan had told the truth, the Defendant argues, the magistrate would have insisted that the warrant include protections for privileged material. Again, even if all this is true, it has nothing to do with probable cause. The magistrate's false belief that the place to be searched was a home not a law office and a home could not have been necessary for his finding of probable cause unless a home with a law office is a less likely place to discover evidence of cigar smuggling than a home without a law office (a proposition for which there is no authority). Furthermore, as pointed out above, defendant makes no detailed allegations of any specific documents taken that were subject to the attorney-client privilege. Nor, does he make any specific allegations as to any particular items which the government intends to use in the prosecution of this case that fall within that category. The government has asserted that it does not intend to use any such materials.

The Defendant has not made a substantial preliminary showing that the warrant affidavit contains false statements that were necessary to the finding of probable cause. This Court need not consider whether the allegedly false statements were made knowingly and intentionally, or with reckless disregard for the truth. The Defendant is not entitled to a hearing and the Motion to Quash Warrant and Suppress Evidence is denied.

## IX.    Supplemental Motion to Quash Warrant and Suppress Evidence

### A.    Probable Cause

The Defendant next argues that the search warrant authorizing the search of his home, issued by Magistrate Judge Rosemond, was not supported by probable cause.

As an initial matter, defense counsel claims that U.S. Customs did not have the statutory authority to execute the warrant and that the magistrate "abandoned his judicial role" by failing to recognize the "severely limited" authority of U.S. Customs. According to defense council, 19 U.S.C. § 1595 authorizes customs agents to search for only three things: (1) merchandise upon which duty has not been paid, (2) merchandise illegally imported, or (3) evidence of violations of 19 U.S.C. § 1592.

In reality, Section 1595 also authorizes customs agents to search for evidence of violations "of any other law enforced or administered by the United States Customs Service." Furthermore, 19 U.S.C. § 1589a provides that agents can "execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States." Clearly, there was no judicial misconduct and the execution of the search warrant was well within the authority of U.S. Customs. The issue remains, however, whether the magistrate had probable cause to issue the warrant.

The term "probable cause" cannot be reduced to any specific test; it is to be determined from the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31, 103 S. Ct. 2317, 2328 (1983). Policy considerations demand that a magistrate's determination of probable cause receive more deferential review than a warrantless search. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663 (1996) (holding that deferential review gives law enforcement

33

an incentive to obtain warrants). Therefore, although probable cause is reviewed de novo, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id.

The Seventh Circuit recently applied *Ornelas, id,* and commented on the appropriate standard of review:

> [A] magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated . . . . Finally, we must keep in mind that doubtful cases should be resolved in favor of upholding the warrant.

*United States v. Quintanilla,* 218 F.3d 674, 677 (7th Cir. 2000) (internal citations omitted).

Defendant argues that Agent Sheridan's affidavit provides no facts of "a contraband 'buy' or 'sale'" to link the defendant's premises with the alleged criminal activities. Even if this is true it does not follow that the affidavit lacks a sufficient link or nexus to the defendant's home. The affidavit contains an overwhelming amount of detail which strongly establishes that the defendant was engaged in a pattern of activity involving travel to and from Cuba through Canada and Mexico for the purpose of smuggling Cuban cigars.[5] The frequent trips invariably began at

---

[5] For example, airplane boarding passes and Cuban entry stamps on his passport, receipts photocopied by Canadian Customs and price schedules found in his garbage, correspondence between the Defendant and the Canadian Government establishing that he personally brought Cuban cigars into Canada, records from a Canadian cargo shipping service showing that he shipped Cuban cigars from Mexico to Canada.

his home and ended there as well. In addition, various inspections at Customs entry points suggested that the defendant used both rental automobiles and his own personal automobile to transport these cigars to the United States. Defendant's travel expenses were, according to the affidavit, paid for almost exclusively by credit card - records of which could reasonably be expected to be found in the home. Furthermore, spreadsheet/database file type documents listing the different types of cigars and prices for each were found in Connors' personal garbage outside his home on March, April, June, and October of 1998 thereby indicating that such evidence was kept in the home. Other evidence of defendant's alleged scheme, such as used and unused envelopes, bills, boarding passes and receipts documenting his travel and his relationship to others also involved in the alleged scheme have also been recovered, according to the affidavit, in the trash outside his home. In addition, the alleged scheme was of a long and continuous duration with frequent transactions and there was evidence to indicate that the defendant continued this pattern of alleged criminal activity as late as September of 1999. Finally, in March of 1997 the defendant admitted to police to that he kept as much as 50 boxes of Cuban cigars in his home at that time. These cigars were actually seized by the police. Therefore, it is clear that the application for the search warrant contained more than enough evidence to establish probable cause to believe that evidence of the alleged criminal activity would be found in the defendant's home at that time.

Nor was the warrant overly broad in its description. The warrant authorized a search for (1) the Defendant's most recent passport, which was allegedly obtained by fraud, and any passports with Cuban entry stamps, (2) all merchandise of Cuban origin, including cigars, (3) all records relating to travel to Cuba, Mexico and Canada, (4) all books and records relating to the

purchase, importation, storage, and sale of Cuban merchandise, and (5) all computer equipment and fax machines. These are exactly the kinds of things one would look to for evidence of the long term systematic illegal conduct alleged in this case.

There was probable cause to search the computer equipment, not only because people nowadays store all kinds of information on computers, but also because on several occasions agents discovered cigar price lists in the Defendant's garbage that appeared to be printouts of spreadsheet files. It was reasonable to seize the computer equipment, rather than searching the contents in the Defendant's home, because separating relevant material from irrelevant material takes time. See *Guest v. Leis*, 2001 WL 733419 (6th Cir. 2001) (holding that, because of the technical difficulties of conducting a computer search in a suspect's home, seizure of computers was a reasonable way to allow officers to locate the offending files).

Nevertheless, the Defendant argues that it was unreasonable to believe that there would be Cuban cigars in his home because the warrant affidavit alleges that he rented storage spaces for that purpose. There is no authority for the proposition that a person who keeps contraband in storage is unlikely to keep contraband and/or records and evidence of the storage of such at home as well.

**B.     Execution of the Warrant**

The Defendant argues that customs agents exceeded the scope of the warrant when they seized his "divorce papers, [his] fiancee's immigration papers, videos, photographs, law office

36

files, client files, correspondences, records, framed photographs, and 12 book manuscripts for a novel in progress." (Def.'s Mem. Supp. Mot. to Quash Warrant and Suppress Evidence at 8).

A reviewing court may properly consider the conditions under which the agents conducted the search, and the particular nature of the evidence being sought in relation to the underlying offenses. *United States v. Abbell*, 963 F. Supp. 1178, 1200 (S.D. Fla. 1997) (holding that in seizure of computers and records from law office, seizure of items outside the warrant was inevitable, but not unconstitutional) It is unfortunate that the defendant used his home both for traditional purposes and, apparently, as an office and as a place from which to conduct and record the very activities the government alleges constitute a crime. In such a situation, however, it is virtually impossible for government agents, no matter how well-intentioned, to flawlessly differentiate during the execution of the search between innocent personal records and personal records which may constitute evidence of crime, or innocent business records and those business records which may also constitute evidence of a crime, or even between business records and personal records. All of the articles seized have a potential reasonable relation to the purpose of the search. It would be unreasonable to expect agents to minutely inspect such things as computer hard drives, files, records and documents while at the defendant's home executing the search warrant. A detailed analysis, which under these circumstances is required in order to be able to differentiate between contraband, evidence, and innocent personal belongings, must necessarily be done after the execution of the warrant. Defendant's Supplemental Motion to Quash Warrant and Suppress Evidence is denied.

**IT IS THEREFORE ORDERED:**

That (1) the Motion to Dismiss is denied, (2) the Motion for Default and Return of Property and Bond is denied, (3) the Motion for Discovery of Use of Mail Cover is granted, (4) the Motion for Discovery and Inspection is denied, (5) the Motion for a Bill of Particulars is denied, (6) the Motion for Disclosure and Production of Electronic Surveillance is denied as moot, (7) the Motion to Suppress Evidence is denied, except as to the second entry seizure by Skokie Police on March 15, 1997. As to that seizure an evidentiary hearing will be necessary to resolve the issue of consent. (8) the Motion to Quash Warrant and Suppress Evidence is denied, and (9) the Supplemental Motion to Quash Warrant and Suppress Evidence is denied.

SO ORDERED                           ENTERED: June 19, 2002


HON. RONALD A. GUZMÁN
United States Judge

A:\Motion to dismiss.rag